[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10020

_____

D.C. Docket No. 2:15-cv-14431-DLG

NICOLE PATSALIDES,

Plaintiff - Appellant,

versus

CITY OF FORT PIERCE,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 6, 2018)

Before MARCUS, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Nicole Patsalides appeals the district court's grant of summary judgment to the City of Fort Pierce on her claims of employment discrimination on the basis of sexual harassment and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a). After careful review, and with the benefit of oral argument, we affirm the order of final judgment entered by the district court.

Patsalides's claims arise from a series of incidents between herself and a male co-worker that occurred after her three months of police training on the job and in her first two weeks as a patrol officer for the police department of the City of Fort Pierce. During that time, by her account, a male patrol officer with whom she worked touched her repeatedly in ways that she considered to be inappropriate, and in general showed an undue interest in her. Over the relevant two-week period, the male officer touched her arm, shoulder, or hands on approximately ten different occasions, and on one occasion rubbed his hand on her thigh from up by her service belt all the way down to her knee. The male officer would also arrive as backup on police calls to which Patsalides was dispatched without being called for, and tried to maximize the amount of time that he spent with her.  Notably, however, Patsalides does not claim that the male officer ever made any remarks of a sexual or flirtatious nature to her.

After two weeks of this sort of behavior, Patsalides reported the male officer to a superior in the police department. Within a day the department launched an

2

investigation. Within three days the male officer was placed on paid administrative leave. Thereafter, his employment with the City was terminated. The termination was based in part on the City's determination that his conduct toward Patsalides violated its sexual harassment policy, and in part on the fact that he had a past record of sexual misconduct of which the City was aware and for which he had been reprimanded.

After she reported the male officer's misconduct, Patsalides claims that she was subjected to retaliation from co-workers who made rude and offensive remarks to her about "snitching" on a fellow officer. She also says that various employment actions, such as the denial of her transfer requests and then her eventual termination almost a year later for excessive absenteeism, were actually motivated by the City's retaliatory desire to punish her for reporting the male officer's inappropriate behavior and for filing a complaint with the Equal Employment Opportunity Commission (EEOC).

Patsalides disputes four of the conclusions underlying the district court's grant of summary judgment. First, she argues that there are genuine issues of material fact as to whether the harassment she experienced was based on sex, and was severe or pervasive enough to create a hostile work environment altering the terms and conditions of her employment, in violation of Title VII. Second, she contends that the record supports a finding of employer liability for the male

3

officer's offending behavior. Third, she says that there is sufficient evidence to support a finding of retaliation in violation of Title VII's opposition clause. Finally, she asserts that her termination violated Title VII's participation clause.

Even if we assume that the record, when taken in a light most favorable to Patsalides, sufficiently supports a finding that the male officer's inappropriate conduct was based on sex and that it created a hostile work environment either because it was severe or pervasive, on this record, we hold that there was no basis on which to find the City liable for the officer's actions. After Patsalides reported the male officer's offensive conduct, the City promptly investigated the matter. Further, within three days it took quick and decisive action to ensure that Patsalides would no longer be subjected to the officer's unwelcome advances by placing the officer on administrative leave. Finally, after concluding its investigation, the City terminated the offending officer, thereby guaranteeing that no further incidents would occur. In many ways, the City's actions following the complaint were a model of proper employer responsiveness under Title VII. See Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996).

We also agree with the district court's determination that the City's past responses to prior allegations of sexual misconduct levelled against the male officer were prompt and adequate. Between 1997 and 2013, the male officer was found to have engaged in some form of sexual misconduct on some four occasions.

4

As for each incident, the City variously responded by issuing written warnings to the officer, counseling him on proper conduct, or suspending him without pay on two different occasions, once for three days and once for five. Indeed, after the most recent incident preceding the events giving rise to this case, the officer was warned that another infraction would result in his termination. And the City made good on this warning after investigating the charges brought by Patsalides.

This pattern of disciplinary action, whereby each new infraction was met with prompt and effective remedial measures and the imposition of increasingly severe punishment that ultimately culminated in the officer's termination, is entirely consistent with the City's obligations under Title VII. See Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1306 (11th Cir. 2007) (holding that offering to provide counseling, to transfer the complainant to a different branch office, and warning the accused harasser was an appropriate response to an accusation of sexual harassment); Fleming v. Boeing Co., 120 F.3d 242, 246 (11th Cir. 1997) (holding that warning the harasser and telling the complainant to report any further problems is, as an initial response, enough to constitute immediate and appropriate corrective action). In no way can the City be said to have been negligent in controlling working conditions. Therefore, there is no basis to hold the City liable for the male officer's actions toward Patsalides.

Finally, we also agree with the district court that Patsalides has failed to show a genuine issue of material fact as to her claims that the City retaliated against her protected activity. The allegedly retaliatory behavior of Patsalides's fellow officers following her complaint of sexual harassment, which largely consisted of rude remarks and social slights, was neither severe nor pervasive enough to create a retaliatory hostile work environment. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) ("An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."). Further, the denial of Patsalides's transfer requests, which occurred over seven months after she first reported the alleged harassment, and her eventual termination, which occurred eleven months after her report and  before the City learned that she had filed her EEOC complaint, were not causally connected to any protected activity. See Brown v. Alabama Dep't of Transp., 597 F.3d 1160, 1182 (11th Cir. 2010). Finally, the City had a substantial, legitimate, non-pretextual reason for terminating her since she had missed many weeks of work during the preceding months.

The district court therefore correctly concluded that the City was entitled to summary judgment on all of Patsalides's Title VII claims. We affirm.

AFFIRMED

6